UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SANTOS ROSALES MORAN,

                        Plaintiff,

        v.

TACOS EL GALLO GIRO CORP., VICTOR
TACUEPIAN DAMIAN, ARACELI TACUEPIAN
DAMIAN, GUADALUPE TACUEPIAN,

                       Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

23-CV-8167
(Morrison, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Plaintiff Santos Rosales Moran filed this action on November 2, 2023, against his former

employer, Tacos El Gallo Giro Corp., and its owners and operators, Victor Tacuepian Damian,

Araceli Tacuepian Damian, and Guadalupe Tacuepian (collectively, "Defendants"),[1] raising

claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York

Labor Law ("NYLL") §§ 190 *et seq.* and §§ 650 *et seq.  See generally* Dkt. Nos. 1, 4.  Plaintiff

seeks recovery for Defendants' failure to pay applicable minimum wages, overtime wages, and

"spread of hours" pay, and failure to provide him with appropriate wage notices and statements in

contravention of the FLSA and NYLL.  *See generally* Dkt. No. 4.

      Currently pending before the undersigned, on a referral from the Honorable Nina R.

Morrison, United States District Judge, is Plaintiff's third motion for default judgment against all

Defendants.  *See* Dkt. No. 22; *see also* Referral Order dated July 5, 2025.

      For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's

motion be granted in part and denied in part, and that judgment be entered against Defendants,

---

[1] On August 22, 2025, the Court terminated Defendant Javier Tacuepian from this action, as Plaintiff
indicated that he was dismissing him without prejudice.  The Clerk of Court has updated the caption
accordingly.

jointly and severally, in the amount of $47,850.00, comprising $34,800.00 in unpaid overtime wage damages and $13,050.00 in unpaid spread of hours damages; $47,850.00 in liquidated damages; and $2,832.00 in attorneys' fees and costs; plus post-judgment interest.  Additionally, the undersigned respectfully recommends that Plaintiff's fifth and sixth causes of action be dismissed without prejudice.[2]

## I.    **Background**

### A.    **Factual Allegations**

The following facts are taken from the Amended Complaint (Dkt. No. 4), Plaintiff's third motion for default judgment (Dkt. No. 22), and the attachments filed in support of the motion; the facts are assumed to be true for the purposes of this motion.  *See NYQF Inc. v. Sigue Corp.*, 781 F. Supp. 3d 104, 112 (E.D.N.Y. 2025) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) ("In light of [the defendant's] default, a court is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." (alterations in original)).

Plaintiff, a resident of Queens County, New York, is a former employee of Tacos El Gallo Giro Corp., an entity operating a food truck fleet, principally located at 92-01 Roosevelt Avenue in Jackson Heights, New York.  Dkt. No. 4 ¶¶ 1, 7, 8.  Plaintiff alleges that Tacos El Gallo Giro Corp. is a domestic corporation organized and existing under the laws of the State of New York that is engaged in interstate commerce and has an annual gross sales volume that exceeds $500,000.  *Id.* ¶¶ 8, 61, 64.  Tacos El Gallo Giro Corp. is owned by the individual Defendants and Javier Tacuepian, who was dismissed from this suit without prejudice; together, they purportedly maintained hiring and firing authority over employees and determined employee compensation and work schedules.  *Id.* ¶¶ 9-54.  Defendants "share[d] common operations and acted jointly in

---

[2] Jessica L. Manzon, a judicial intern who is a third-year law student at the Benjamin N. Cardozo School of Law, is gratefully acknowledged for her assistance in the research of this Report and Recommendation.

the operation of each dollar store wherein Plaintiff worked." *Id.* ¶ 56. Plaintiff alleges that "[Defendants'] trucks were typically operated in two-man teams" and that "Defendants almost always had between 8-11 trucks out making sales on a daily basis." Dkt. Nos. 22-2 ¶¶ 5, 29.

Plaintiff worked on an hourly basis for Defendants as a cook and general laborer from "March 2020 until January 2, 2023."[3] Dkt. No. 4 ¶¶ 2, 7. Defendants compensated Plaintiff through "a fixed weekly rate of $600.00 with no premium for his overtime hours" in cash, despite regularly working approximately 12 hours per day for six to seven days per week. *Id.* ¶¶ 70-71; Dkt. No. 22-14 at 16. Plaintiff thus alleges Defendants "failed to pay [him] overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek" (Dkt. No. 4 ¶ 88), and "failed to pay [him] the required 'spread of hours' pay for any day in which [he] had to work over 10 hours per day," which he alleges was each day that he worked for Defendants. Dkt. No. 22-14 at 3.

Plaintiff further asserts that Defendants did not provide him with wage notices in both English and Spanish, the latter being Plaintiff's primary language, nor statements in accordance with NYLL § 195(1) and 195(3). Dkt. No. 4 ¶¶ 75-76. Additionally, Plaintiff contends that Defendants did not track his hours and, during the period of Plaintiff's employment from March 2020 until January 2, 2023, failed to apply tip credit to his wages. *Id.* ¶¶ 72-73.

## B.    Procedural History

Plaintiff filed the initial complaint on November 2, 2023, which was amended on December 11, 2023 to include Defendant Araceli Tacuepian Damian. *See generally* Dkt Nos. 1, 4. Plaintiff alleges six causes of action against Defendants: (i) failure to pay minimum wages in

---

[3] Although the Amended Complaint and Plaintiff's motion fail to specify his specific dates of employment with the Defendants, the damages calculation he submitted in support of his motion indicates he was employed by Tacos from March 15, 2020, through January 2, 2023. Dkt. No. 22-8.

violation of the FLSA; (ii) failure to pay overtime wages in violation of the FLSA; (iii) failure to pay minimum wages in violation of the NYLL; (iv) failure to pay overtime wages in violation of the NYLL; (v) violation of notice and recordkeeping requirements under the NYLL; and (vi) violation of wage statement requirements under the NYLL.  Dkt. No. 4 ¶ 80-105.

On December 12, 2023, the Clerk of Court issued summonses to all Defendants.  *See* Dkt. No. 5.  Plaintiff served Tacos El Gallo Giro Corp. through delivery to an authorized agent at the Office of the Secretary of State of the State of New York, pursuant to N.Y. Bus. Corp. Law § 306(b)(1).  *See* Dkt. No. 6.  Plaintiff's process server twice attempted service on Defendants Araceli Tacuepian Damian, Javier Tacuepian, Victor Tacuepian Damian, and Guadalupe Tacuepian at their last known residence at 3554 95th St, Apt 3C, Jackson Heights, NY 11372 on December 26 and December 27, 2023.  Dkt. No. 8.  On December 30, 2023, after again attempting service, Plaintiff's process server affixed a copy of the summons and Amended Complaint to the door at that same address, and additionally mailed via first class mail a copy of the same to the same address on January 2, 2024.  *Id.*  To date, no answers or responses were or have been interposed by the Defendants.

On May 17, 2024, Plaintiff requested certificates of default against Defendants Araceli Tacuepian Damian, Javier Tacuepian, Victor Tacuepian Damian, and Guadalupe Tacuepian.  *See* Dkt. No. 9.  On May 29, 2024, the Clerk of Court entered default against the individual Defendants, noting that they had "not filed an answer or otherwise moved with respect to the complaint herein."  Dkt. No. 10.  On July 28, 2024, Plaintiff requested for a certificate of default against Defendant Tacos El Gallo Giro Corp.  *See* Dkt. No. 11.  On July 31, 2024, the Clerk of Court entered default against Tacos El Gallo Giro Corp. for the same reason as it did against the individual Defendants.  *See* Dkt. No. 13.

On August 30, 2024, Plaintiff filed his first motion for default judgment, in which Plaintiff sought: (1) unpaid minimum wages and overtime compensation under the FLSA and NYLL in the amount of $104,400; (2) unpaid spread of hours pay in the amount of $12,558.00; (3) liquidated damages in the amount of $116,958.00; (4) statutory damages for failure to provide wage notices and wage statements under the NYLL in the amount of $10,000.00; (5) attorneys' fees in the amount of $2,100.00; and (6) costs in the amount of $732.00. *See* Dkt. No. 14. In support of this motion, Plaintiff submitted: (1) a memorandum of law (Dkt. No. 14-2); and (2) a declaration from Plaintiff, explaining his employment at Tacos El Gallo Giro Corp., the hours he worked, and the pay he received (Dkt. No. 14-3).

On December 21, 2024, this case was reassigned from the Honorable Sanket J. Bulsara, then-United States Magistrate Judge, to the undersigned. *See* December 21, 2024 Dkt. Order. On January 3, 2025, a status conference was held discussing Plaintiff's motion; counsel for Plaintiff appeared, but Defendants did not appear. *See* January 3, 2025 Minute Entry. Plaintiff agreed to withdraw his motion without prejudice to address deficiencies related to Local Civil Rule 55.2 and the Servicemembers Civil Relief Act ("SCRA"). *Id.* The Court ordered Plaintiff to file an amended motion complying with all applicable rules by February 7, 2025. *Id.* On January 7, 2025, the Court ordered the Clerk of Court to serve copies of the Amended Complaint and docket on Tacos El Gallo Giro Corp. at 86-22 Whitney Ave, Fl 2, Elmhurst, NY 11373, and at 6403 Roosevelt Ave, Woodside, NY 11377; the individual Defendants at their last known residence; and Defendant Javier Tacuepian additionally at 6908 Woodside Ave, Apt 2F, Woodside, NY 11377. *See* January 7, 2025 Dkt. Order. The Court subsequently, on Plaintiff's request, extended the deadline to file an amended motion to February 21, 2025. *See* Dkt. No. 17; *see also* February 6, 2025 Dkt. Order.

On February 21, 2025, Plaintiff filed an amended motion for default judgment, including (1) a declaration from Plaintiff that he did not know Defendants Victor Tacuepian and Guadalupe Tacuepian to be in active military service during the course of his employment, nor did he believe that Defendants were members of the United States Military at any time since he started working for Defendants; and (2) a status report pursuant to SCRA from the Department of Defense Manpower Data Center indicating that Defendants Victor Tacuepian and Guadalupe Tacuepian were not on active duty status and have never been on active duty status. *See* Dkt. Nos. 18-4, 18-13.

On June 13, 2025, the Court held a status conference discussing Plaintiff's amended motion, where Defendants again failed to appear. *See* June 13, 2025 Minute Entry.  Plaintiff agreed to withdraw his amended motion and file a third motion addressing deficiencies related to Local Civil Rule 55.2 and the SCRA, specifically ensuring (1) all SCRA affidavits were supported by the necessary facts to support the affidavit for every individual Defendant; (2) Plaintiff's motion and all supporting documents properly identify the specific claims and Defendants against whom a default judgment was sought; and (3) all documents in support of the request for default judgment were properly served on each Defendant. *See id.*  The Court ordered Plaintiff to file an amended motion for default judgment complying with all applicable rules by July 2, 2025. *Id.*

On July 2, 2025, Plaintiff filed the instant renewed motion for default judgment against all Defendants except Javier Tacuepian. *See* Dkt. No. 22.  In support of his motion, Plaintiff attached: (1) SCRA affidavits for both Defendants Victor Tacuepian and Guadalupe Tacuepian, (2) an affidavit identifying the four Defendants against whom Plaintiff seeks a default judgment against, which are Victor Tacuepian Damian, Araceli Tacuepian Damian, Guadalupe Tacuepian, and Tacos El Gallo Giro Corp., and (3) an affirmation of service on the four Defendants against whom

Plaintiff seeks a default judgment. *See id.* and Dkt. No. 23. On August 22, 2025, the undersigned directed the Clerk of Court to dismiss Defendant Javier Tacuepian without prejudice. *See* August 22, 2025 Dkt. Order.

On August 31, 2025, the undersigned ordered Plaintiff to file a supplemental letter to provide additional support for his unpaid minimum wage claims pursuant to the minimum wage provisions of the FLSA and NYLL. *See* August 31, 2025 Text Order. The undersigned also ordered Plaintiff to file a certificate showing compliance with Local Civil Rule 7.1(c) in connection with Plaintiff's default judgment motion. *See* September 1, 2025 Dkt. Order.

On September 5, 2025, per the Court's orders, Plaintiff filed a letter in support of his unpaid minimum wage claims (the "Letter"), with the required Certificate of Compliance with Local Civil Rule 7.1(c) attached. *See* Dkt. Nos. 24, 24-1.

## II.    <u>Standard for Default Judgment</u>

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." *Harbus v. Vosa TV Inc.*, No. 24-CV-3572 (NGG) (JAM), 2025 WL 1153818, at *2 (E.D.N.Y. April 21, 2025) (quoting Fed. R. Civ. P. 55(a)), *report and recommendation adopted in part*, 2025 WL 1153818 (E.D.N.Y. Apr. 21, 2025). At the second step, the Clerk of Court can enter default judgment "only if the plaintiff's claim is for a 'sum certain or a sum that can be made certain by computation.'" *Id.* (quoting *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023). In all other cases, "the plaintiff must move the court to enter default judgment." *Id.* (citing *Esquivel*, 2023 WL 633866, at *3). To

7

"enter or effectuate judgment," the court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nonetheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

The decision to grant or deny a default motion is "left to the sound discretion of [the] district court." *Harbus*, 2025 WL 1153818, at *2 (alteration in original) (quoting *Esquivel*, 2023 WL 6338666, at *3). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23,

2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).  As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *See Franco*, 2010 WL 3780972, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)); *Enron Oil Corp.*, 10 F.3d at 96 (listing factors).

## III.    **Jurisdiction and Venue**

The Court "must [] satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants."  *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.    **Subject Matter Jurisdiction**

Federal district courts have original subject matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States."  28 U.S.C. § 1331.  Plaintiff's first and second causes of action, brought under the FLSA, allege unpaid overtime wages and unpaid wages.  Dkt. No. 4 ¶¶ 80-90.  Nothing in the record suggests that Plaintiff's FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, wholly insubstantial, or frivolous.  *Cf. A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022).  This action thus arises under the laws of the United States, which gives the Court subject matter jurisdiction over Plaintiff's first and second causes of action.  *See, e.g., Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp.

3d 337, 345 (E.D.N.Y. 2014) (stating that the FLSA claims arose under the laws of the United States and thus established subject matter jurisdiction); *Jiminez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 239 (E.D.N.Y. 2024) (finding FLSA claims conferred the court with subject matter jurisdiction).

The Court also has supplemental jurisdiction over Plaintiff's third and fourth causes of action, brought under the NYLL.  *See* Dkt. No. 4 ¶¶ 91-99.  Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy.  28 U.S.C. § 1367(a).  Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).  Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[ ]."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).  Here, supplemental jurisdiction clearly extends to the third and fourth causes of action regarding unpaid overtime wages and unpaid wages (Dkt. No. 4 ¶¶ 91-99), because they virtually overlap with Plaintiff's first and second claims seeking recovery for the same violations under similar or analogous state law provisions.

The Court, however, lacks subject matter jurisdiction over Plaintiff's fifth and sixth causes of action, in which Plaintiff alleges violations of notice and recordkeeping and wage statement requirements (Dkt. No. 4 ¶¶ 100-105), since Plaintiff lacks standing to pursue those claims in federal court.

Article III of the United States Constitution restricts federal court power to hearing "cases" and "controversies."  U.S. Const. Art. III, § 2, cl. 1.  A case or controversy cannot exist if the

10

plaintiff lacks a personal stake, or "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Standing is not "dispensed in gross." *TransUnion*, 594 U.S. at 431. Rather, the plaintiff must show standing separately for each claim asserted. *Id.* "[S]tanding is a threshold matter of justiciability, and if a plaintiff lacks standing to sue, the Court has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction." *Dunston v. Piotr & Lucyna LLC*, No. 21-CV-6402 (AMD) (SJB), 2023 WL 5806291, at *4 (E.D.N.Y. July 26, 2023) (quoting *Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC), 2022 WL 3701508, at *4 (S.D.N.Y. Aug. 26, 2022)), *report and recommendation adopted*, No. 21CV6402AMDSJB, 2023 WL 5806253 (E.D.N.Y. Sept. 7, 2023). "Like all subject matter issues, standing can be raised *sua sponte*." *Id.* (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

"[A] plaintiff must establish Article III standing for *all* of his claims, whether or not the Court also has supplemental jurisdiction." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *3 (E.D.N.Y. Feb. 24, 2023), *aff'd*, 113 F.4th 300 (2d Cir. 2024). Although a court may hear state claims if they "derive from a common nucleus of operative facts," a Court cannot "discern or speculate which of the 'operative facts' establish an injury to [a plaintiff] on his NYLL wage notice and wage statement claims." *Id.* (internal quotations and citations omitted).

Here, Plaintiff fails to allege facts linking a legally cognizable injury that he personally experienced to Defendants' purported failure to provide wage statements or Defendants' purported

failure to provide Plaintiff with notice of his rate of pay, regular pay day, and such other information, as required by the NYLL. *See Liang v. USA QR Culture Indus. Dev. LLC*, 704 F. Supp. 3d 408, 416 (S.D.N.Y. 2023) ("[P]laintiffs claim that Defendants violated the wage notice and wage statement requirements, but they have not alleged any concrete downstream injuries stemming from the alleged violation. Instead, they merely allege that Defendants 'intentionally failed to provide notice to employees in violation of NYLL § 195,' and 'did not provide the true and accurate paystub information on or after each payday.'" (internal citation omitted)); *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-01417 (JLS) (MJR), 2022 WL 503939, at *7 (W.D.N.Y. Sept. 29, 2022) ("While the deficiencies in [a] defendants' provisions of hiring notices may amount to violations of the labor law, neither [the] plaintiffs nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court."), *report and recommendation adopted*, 2023 WL 1969370 (W.D.N.Y. Jan. 26, 2023). The Amended Complaint instead merely alleges that Defendants failed to comply with these statutory mandates, and that, as a result, Plaintiff could not substantiate his income. *See* Dkt. No. 4 ¶¶ 75-79, 100-104.

Since the Supreme Court issued its decision in *TransUnion*, "[c]ourts throughout the Second Circuit have . . . found no standing in cases, such as the instant case, where [the] [p]laintiffs have not established any injury traceable to violation of the wage notice and statement requirements." *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 55 (S.D.N.Y. 2023) (citing cases); *see also Lucero v. Shaker Contractors, Corp.*, No. 21-CV-8675 (LGS), 2023 WL 4936225, at *3 (S.D.N.Y. July 27, 2023) ("Courts in this District have applied *TransUnion* to find plaintiffs lack standing to bring claims under the NYLL's wage notice and wage statement provisions when

those plaintiffs do not make specific allegations of concrete injuries they suffered as a result of their employers' failure to provide required wage records.").

Plaintiff's theory as to *how* he was injured by Defendants' failure to provide the required documents is speculative at best.  Although Plaintiff asserts that he suffered harm because he was unable to document his hours worked, keep track of pay received throughout his employment, or properly reconcile his hours with his pay, and thus his ability to substantiate his income was compromised, he fails to identify any specific and concrete injury caused by these alleged deficiencies.  *Id.* ¶ 77-78.  Without some tangible downstream harm flowing from Defendants' statutory violations, Plaintiff cannot be deemed to have suffered a concrete injury.  *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 311 (2d Cir. 2024) (finding that the plaintiff lacked standing to sue for a violation of NYLL § 195 "[w]ithout plausible allegations that he suffered a concrete injury because of [the defendant's] failure to provide the required notices and statement").

The decision styled *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518 (E.D.N.Y. Apr. 25, 2023), is illustrative here.  In *Quieju*, the plaintiff, a former restaurant worker, alleged that his former employer violated the FLSA and the NYLL by, *inter alia*, not providing him "with a time-of-hire wage notice nor with the wage statements" under the NYLL.  *Id.* at *1. The court held that the plaintiff was unable to show that he had standing to bring these claims, recognizing the plaintiff's implicit argument "that *if* [the] defendants had given him the required documents, those documents *would have* informed him that he was not being paid his required wages."  *Id.* at *2.  "Enlightened by that knowledge, [the] plaintiff then *would have* demanded his required wages.  Having made such a demand, [the] defendants *would have* then paid him his required wages, and [the] plaintiff *would have* avoided the injury he suffered by the failure to properly pay him."  *Id.*  Although the plaintiff in *Quieju* tried to argue that this implicit analysis

13

demonstrated that he had suffered an actual and concrete injury, the court found that "[t]his hypothetical chain of events is not what the Supreme Court means by an 'injury fairly traceable to the allegedly unlawful conduct.'" *Id.* (quoting *California v. Texas*, 593 U.S. 659, 668-69 (2021)). The court continued that "[t]he injury that plaintiff suffered (*i.e.*, [the] defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law." *Id.* at *2.

As in *Quieju*, Plaintiff here has not shown that he suffered a concrete injury resulting from Defendants' purported violations of the NYLL's wage statement and wage notice requirements. Thus, Plaintiff lacks Article III standing to pursue his fifth and sixth causes of action. *See, e.g.*, *Vazquez v. Cousins Grocery & Grill Inc.*, No. 21-CV-4528 (RML), 2025 WL 1384069, at *9 (E.D.N.Y. May 13, 2025) (holding that the plaintiff's wage notice and statement claims are dismissed for lack of standing); *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA) (MMH), 2024 WL 1342739, at *1 (E.D.N.Y. Mar. 29, 2024) ("Plaintiff lacks standing to pursue his claims that [the defendant] violated the NYLL's wage notice and wage statement provisions because [p]laintiff had not adequately pleaded a tangible injury resulting from [the defendant's] failure to provide the required notices."); *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB) (MMH), 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024); *Cao v. Flushing Paris Wedding LLC*, No. 20-CV-2336 (RPK) (JAM), 2024 WL 1011162, at *23 (E.D.N.Y. Mar. 9, 2024), *report and recommendation adopted*, 727 F. Supp. 3d 239 (E.D.N.Y. Mar. 29, 2024); *Saavedra v. Dom Music Box Inc.*, No. 21-CV-6051 (ENV) (JAM), 2024 WL 208303, at *5 (E.D.N.Y. Jan. 19, 2024), *report and recommendation adopted*, (Text Order dated Mar. 13, 2024); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29,

2022) ("Plaintiff has not linked any injury-in-fact to [d]efendants' failure to provide statutory notices under the NYLL, so [plaintiff] lacks standing to recover on that claim." (citation omitted)); *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at \*7 (E.D.N.Y. Mar. 28, 2022) ("While those may be technical violations of the NYLL, neither [p]laintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action."); *cf. Johnson v. Best Bev LLC*, No. 3:24-CV-1260 (AJB) (ML), 2025 WL 2734204, at \*5 (N.D.N.Y. Sept. 25, 2025).

Because Plaintiff lacks standing for the notice and recordkeeping and wage statement claims under the NYLL, the Court lacks subject matter jurisdiction his fifth and sixth causes of action. Accordingly, the undersigned respectfully recommends that Plaintiff's fifth and sixth causes of action be dismissed without prejudice.

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796, 2023 WL 8853704, at \*5 (E.D.N.Y. Dec. 22, 2023) ("A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." (internal quotations and citation omitted)), *report and recommendation adopted*, (Text Order dated Jan. 9, 2024).

Here, the Court has personal jurisdiction over Defendants. First, Plaintiff properly served Tacos El Gallo Giro Corp., a New York company, by delivering copies of the Summons and Amended Complaint to an authorized agent in the office of the New York Secretary of State. *See*

Dkt. No. 6; *see also* Fed. R. Civ. P. 4(h)(1)(A); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1). Plaintiff also properly served Guadalupe Tacuepian, Araceli Tacuepian Damian, and Victor Tacuepian Damian by resorting to "nail and mail" service after three attempts of personal service. *See* Dkt. No. 8; *see also* Fed R. Civ. P. 4(e)(1)-e(2)(A); N.Y. C.P.L.R. §§ 308(1), (4); Am. *Builders & Contractors Supply Co. v. CR1 Contracting, LLC*, 565 F. Supp. 3d 330, 339 (W.D.N.Y. 2021) (noting that at least three attempts to personally serve an individual at their abode is sufficient due diligence to resort to "nail and mail" service and collecting cases). "[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Second, New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016) ("A state has . . . general jurisdiction over its residents."). Tacos El Gallo Giro Corp. is a New York corporation with its principal place of business in Jackson Heights, New York. *See* Dkt. No. 4 ¶ 8. New York courts may exercise jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)); *see also* N.Y. C.P.L.R. § 301. New York courts may also exercise jurisdiction over non-domiciliary corporations or individuals "who transact[ ] business within the state" so long as "the cause of action arises from that transaction." *Id.* (quoting *Licci*, 673 F.3d at 60); *see also* N.Y. C.P.L.R. § 302(a)(1). Guadalupe Tacuepian, Araceli Tacuepian Damian, and Victor Tacuepian Damian "own[] and control[]" Tacos El Gallo

Giro Corp., exerting final authority over all personnel and payroll decisions. *See* Dkt. No. 4 ¶¶ 9, 10-36, 44-54.  Guadalupe Tacuepian further "supervised Plaintiff on a daily basis at work." *Id.* ¶ 30.  Thus, Defendants transact business in New York.

Accordingly, the undersigned respectfully recommends that the Court may exercise personal jurisdiction over Defendants.

### C.    Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Here, Plaintiff asserts that venue is proper in the Eastern District of New York because "a substantial part of the events or omissions giving rise to the claims occurred in this [D]istrict, Defendants operate their business in this [D]istrict, and Plaintiff was employed by Defendants in this [D]istrict."  Dkt. No. 4 ¶ 6.

Accordingly, the undersigned respectfully recommends a finding that venue is proper in this district under 28 U.S.C. § 1391(b)(2).

## IV.    Procedural Compliance with Federal Rules and Local Civil Rules

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Co. v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."

*Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotations and citation omitted).

### A.    Service of Process

Federal Rule of Civil Procedure 4(e)(1) permits a party to effect service in accordance with the rules of the state where the district is located or where service is made.  Fed. R. Civ. P. 4(e)(1).  As to Defendant Tacos El Gallo Giro Corp., state law permits a party to effect service by delivering the summons and complaint to the New York Secretary of State as an agent of the corporation.  N.Y. Bus. Corp. Law § 306(b)(1).  Here, Plaintiff served Tacos El Gallo Giro Corp. with notice of this action by his process server delivering the Summons and Amended Complaint to an agent in the Office of the Secretary of State authorized to accept service for Tacos El Gallo Giro Corp.  *See* Dkt. No. 6.  Thus, Plaintiff properly served Tacos El Gallo Giro Corp.

As to the individual Defendants, when personal service cannot be effected by attempting with due diligence to (1) deliver the summons within the state to a person of suitable age and discretion at the usual place of abode or dwelling place of the person to be served, or (2) mail the summons by first class mail to the person to be served at his or her last known residence, so long as the delivery and mailing occur within twenty days of each other (N.Y. C.P.L.R. § 308(2)), state law permits a party to effect service by (i) affixing the summons to the door of the party's dwelling place or usual place of abode, and (ii) mailing the summons by first class mail to the person to be served at his or her last known residence, subject to the same twenty day limit as the standard process. N.Y. C.P.L.R. § 308(4).

Here, Plaintiff served the individual Defendants with notice of this action by his process server affixing a true copy of the documents to the door of their usual place of abode and last known address at 3554 95th St, Apt 3C, Jackson Heights, NY 11372.  Dkt. No. 8.  The process

server did so after three prior attempts at personal service, on December 26, 2023, December 27, 2023, and December 30, 2023. *Id.* Plaintiff's process server also mailed a copy of the summons and Amended Complaint by first class mail to the same address within the twenty-day limit. *Id.* Plaintiff thus properly served the individual Defendants pursuant to state law. *See CR1 Contracting*, 565 F. Supp. 3d at 338-39 (explaining requirements for nail and mail service under N.Y. C.P.L.R. § 308(4)); *Sartor v. Utica Taxi Center, Inc.*, 260 F. Supp. 2d 670, 675-76 (S.D.N.Y. 2003) (collecting cases). Accordingly, the undersigned recommends a finding that Plaintiff adequately served Defendants.

### B.    Entry of Default

The Court next finds that the Clerk of Court properly issued certificates of default for each Defendant. Tacos El Gallo Giro Corp. was served on December 19, 2023, requiring an answer or response to the Amended Complaint by January 9, 2024. *See* Dkt. No. 6; *see also* Fed. R. Civ. P. 12(a)(1)(A)(i). The individual Defendants were served on January 2, 2024, requiring an answer or response by January 23, 2024. *See* Dkt. No. 8; *see also* Fed. R. Civ. P. 12(a)(1)(A)(i). After Defendants failed to timely appear in the action or respond to the pleadings, Plaintiff requested that the Clerk of Court issue certificates of default. Dkt. No. 9.

Pursuant to Fed. R. Civ. P. 55(a), the Clerk of Court properly entered certificates of default against the individual Defendants on May 29, 2024 and against the corporate Defendant on July 31, 2024, noting their failures to file "an answer or otherwise moved with respect to the complaint herein." Dkt. Nos. 10, 13. Accordingly, the Clerk's entry of default in this case was proper.

### C.    Local Civil Rules 7.1 and 55.2

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits.  Loc. Civ. R. 7.1(a).  Under Local Civil Rule 55.2:

> A party seeking a default judgment . . . must file: (1) an affidavit or declaration showing that: (A) the clerk has entered default . . . ; (B) the party seeking default judgment has complied with the Servicemembers Civil Relief Act . . . ; (C) The party against whom judgment is sought is not known to be a minor or an incompetent person . . . ; (2) . . . the papers required by Local Civil Rule 7.1, including a memorandum of law, a proposed order . . . ; and (3) a certificate of service stating that all documents in support of the request for default judgment . . . have been personally served on, or mailed to the last known residence (for an individual defendant) or business address) for other defendants.

Loc. Civ. R. 55.2(a).

In addition to the requirements of Local Rule 55.2(a), a party seeking default judgment from the Court must file a statement of damages that shows the proposed damages and their basis. Loc. Civ. R. 55.2(c).

Here, Plaintiff has complied with Local Civil Rules 7.1 and 55.2.  Plaintiff complied with the procedural requirement set forth in Local Civil Rule 7.1 by filing a notice of motion (Dkt. No. 22), a memorandum of law (Dkt. No. 22-14), affidavits and exhibits (Dkt. Nos. 22-1 to 22-13) in support of the motion, and a certificate of compliance with Rule 7.1(c) (Dkt. No. 24-1).  Per Local Civil Rule 55.2(a), Plaintiff additionally attached to his motion the Clerk's certificates of default, a copy of the Amended Complaint, a proposed form of default judgment, and an affidavit attesting to compliance with the SCRA. Dkt. Nos. 22-7, 22-5, 22-11, 22-3.  Moreover Plaintiff has mailed all papers submitted in connection with the motion for a default judgment to the "last known business address" of Tacos El Gallo Giro Corp., and the "last known residence[s]" of Guadalupe Tacuepian, Araceli Tacuepian Damian, and Victor Tacuepian Damian pursuant to Rule 55.2(a)(3). Dkt. No. 23.  Finally, Plaintiff attached to his motion the necessary documentation concerning damages as required by Rule 55.2(c).  *See* Dkt. Nos. 22-1, 22-2, 22-8, 22-10.

20

Accordingly, the undersigned respectfully recommends that the Court find that Plaintiff has satisfied the jurisdictional requirements to proceed with his motion under Local Civil Rules 7.1 and 55.2.

**D.    Compliance with the SCRA**

The SCRA requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022) (noting that such an affidavit is absolutely mandatory), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."  *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012) (citation omitted).

Here, as part of his current motion for default judgment, Plaintiff has complied with this requirement and submitted confirmation that Victor Tacuepian Damian and Guadalupe Tacuepian are not, nor have ever been reported as being, in active duty at any point since this suit was commenced.  *See* Dkt. Nos. 22-12, 22-13. Plaintiff also stated that he does not have the date of birth or social security number needed to confirm Araceli Tacuepian Damian's military service, although "[i]t is highly likely Defendant Araceli Tacuepian is not a citizen of the United States." Dkt. No. 22-1 ¶ 6.  Because Plaintiff sufficiently has investigated the individual Defendants' military status throughout this litigation, Plaintiff has thus complied with his requirements under the SCRA.  *See Perez v. Exquisito Rest. Inc.*, No. 23-CV-8707 (OEM) (MMH), 2025 WL 630138, at *5 (E.D.N.Y. Feb. 27, 2025) ("The non-military affidavit must be based not only on an

investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered." (quoting *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD) (VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021))).

Accordingly, the undersigned respectfully recommends the Court find that Plaintiff has satisfied the jurisdictional requirements to proceed with his motion.

## V.    Liability Under the FLSA and NYLL

### A.    Statute of Limitations

As a threshold matter, the Court considers whether Plaintiff's claims are timely under the applicable statutes of limitations. *See Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). Under the NYLL, the statute of limitations is six years. *See* N.Y. Lab. Law § 663(3). "The FLSA and the NYLL have different statutes of limitations." *Chen*, 2023 WL 2583856, at *8. "The FLSA statute of limitations is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Id.* (quoting 29 U.S.C. § 255(a)).

"When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies." *Rodriguez*, 2011 WL 4962397, at *2 (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398, at *11 (E.D.N.Y. June 24, 2010)), *report and recommendation adopted*, 2010 WL 2927403 (E.D.N.Y. July 19, 2010). "Courts have held that for the purposes of establishing the statute of limitations under FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period." *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 278 (E.D.N.Y. 2015) (quoting *Addison v. Reitman Blacktop Inc.*, 283

F.R.D. 74, 81 (E.D.N.Y. 2011)); *see also* 29 C.F.R. § 790.21(b) ("[A] cause of action . . . for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day[.]").

Here, Plaintiff commenced this action on November 2, 2023.  *See* Dkt. No. 1.  Plaintiff was "employed by Defendants [at Tacos El Gallo Giro Corp.] from March 2020 until January 2, 2023." Dkt. No. 4 ¶ 7.  In light of Defendants' default and the resulting presumption that any violations of the FLSA were "willful," Plaintiff may therefore recover under the FLSA for any claims that accrued starting on November 2, 2020, and under the NYLL for the entire period of his employment.

### B.    The Employment Relationship under the FLSA

The FLSA is to be "construed [ ] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency."  *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotations and citation omitted).  To plead a cause of action under the FLSA, a plaintiff must establish: (1) that the defaulting defendants are employers subject to the FLSA; (2) the plaintiff is an employee within the meaning of the FLSA; (3) that the plaintiff's employment relationships were not exempted from the statute; and (4) a violation of one of the statute's provisions.  *See Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-01423 (CBA) (PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019) (listing elements), *report and recommendation adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

### 1.    Whether Defendants are Employers under the FLSA

The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The term "person" in this definition may be an "individual" or "any organized group of persons," including corporations. 29 U.S.C. § 203(a).  The FLSA applies to employees who were either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §§ 206(a), 207(a).[4]

"To be an 'enterprise engaged in commerce,' the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) 'employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person.'"  *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM) (MMH), 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (quoting 29 U.S.C. § 203(s)(1)(A)(i)-(ii)); *see also Vazquez*, 2025 WL 1384069, at *2 ("The question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability." (quoting *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d  645, 654 (E.D.N.Y. 2020))). "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations."  *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT) (RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017) (citation omitted), *report and recommendation adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

### a.    Tacos El Gallo Giro Corp.

---

[4] The NYLL lacks this requirement.  *See Gangadharan v. GNS Goods & Servs.*, No. 18-CV-7342 (KAM) (MMH), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022) (citing *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *4 (E.D.N.Y. Apr. 1, 2008)).

"A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage." *Chen*, 2023 WL 2583856, at *9 (citation omitted); *see also Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022) ("[F]or employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce."). The enterprise coverage test considers whether the employer "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also* 29 U.S.C. § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof").

Local business activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) ("[T]he test is met if [the] [p]laintiffs merely handled supplies or equipment that originated out-of-state." (quotations and citation omitted)). The individual coverage test, respectively, considers the "employment actions" of each plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Rowe*, 2019 WL 4395158, at *4 (citation omitted).

A plaintiff's allegations on default "are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an 'enterprise engaged in commerce.'" *Reyes v. Tacos El Gallo Giro Corp.*, 20-CV-3474 (EK) (SJB), 2022 WL 940504, at *5 (E.D.N.Y.

Jan. 25, 2022) (quoting *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015)), *report and recommendation adopted*, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Here, Plaintiff's sufficiently alleges that Tacos El Gallo Giro Corp. engaged in interstate commerce and thus satisfying the enterprise coverage test.  In his affidavit filed in support of his motion, Plaintiff alleges that the entity was comprised of "eleven food trucks" that "sold prepared Mexican food like burritos and tortas, and other common Mexican style food items."  Dkt. No. 22-2 ¶ 3.  Plaintiff specifically states that Tacos El Gallo Giro Corp. used and sold numerous food and cleaning items daily that were produced outside of New York, including "tortillas, tomato sauce, beef and chick, cleaning supplies, and packaging materials," and that he himself "regularly handled goods in interstate commerce, such as food and other supplies produces outside the state of New York."  *Id.* ¶ 30; *see Reyes*, 2022 WL 940504, at *5 (inferring that some employees handled goods that were moved or produced in interstate commerce given the nature of the food service business that Tacos El Gallo Giro Corp. operated, even though the plaintiff did not allege that she herself handled such items).  Plaintiff also claims to have observed "dozens of items marked as being produced outside of the state and mostly outside of the count[r]y such as items made in China and . . . Mexico."  *Id.*  Additionally, the Amended Complaint states that Tacos El Gallo Giro Corp. "had a gross annual volume of sales of not less than $500,000." Dkt. No. 4 ¶ 61.

The decision from this District in *Reyes v. Tacos El Gallo Giro Corp.* is particularly relevant, where Tacos El Gallo Giro Corp. was previously found to be an employer under the standards for enterprise coverage.  *See Reyes*, 2022 WL 940504, at *5-*6 (holding that Tacos El Gallo Giro Corp. was an employer because the plaintiff alleged that "[Tacos El Gallo Giro Corp.] conducted business with vendors and other businesses outside the State of New York," [Tacos El Gallo Giro Corp.] conducted business in interstate commerce involving the purchase of food and

other essential supplies," and it had "annual revenues of more than $500,000"). Considering this precedent and for the foregoing reasons, Plaintiff has sufficiently alleged that Tacos El Gallo Giro Corp. is an employer subject to the FLSA.

### b.    Victor Tacuepian Damian, Araceli Tacuepian Damian, and Guadalupe Tacuepian

As for Victor Tacuepian Damian, Araceli Tacuepian Damian, and Guadalupe Tacuepian, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual "operations" in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013)). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110.

In determining whether an individual is an "employer," the Court is guided by the "economic reality" test set forth in *Carter v. Dutchess Community College*. *See* 735 F.2d 8, 12 (2d Cir. 1984) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28 (1961)). Under this test, relevant inquiries include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (internal quotations and citations omitted); *see also Vasquez v. Bolla Operating L.I. Corp.*, No. 22-CV-7014 (NCM) (ST), 2025 WL 1029391, at *4 (E.D.N.Y. Feb. 25, 2025) ("Courts routinely hold that allegations that 'closely track' the test's factors . . . are adequate to establish that an individual defendant is an 'employer.'"), *report and recommendation adopted*, 2025 WL

27

957555 (E.D.N.Y. Mar. 31, 2025); *Tapia*, 906 F.3d at 61 (applying the Carter factors to determine individual liability under the FLSA). "The 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)); *Brito*, 2022 WL 875099, at *6 ("The test looks at the totality of the circumstances, and no individual factor is dispositive.").

Plaintiff alleges that during the time of his employment, Victor Tacuepian Damian, Araceli Tacuepian Damian, and Guadalupe Tacuepian jointly owned and operated Tacos El Gallo Giro Corp, and jointly employed Plaintiff. Dkt. No. 4 ¶¶ 55-56, 58. Plaintiff asserts that Victor Tacuepian Damian, Araceli Tacuepian Damian, and Guadalupe Tacuepian "possessed substantial control over Plaintiff's working conditions" and had power over personnel and payroll decisions, including abilities to "hire and fire employees at Tacos El Gallo Giro Corp.," "review and maintain employment records pertaining to [] Plaintiff and the pay practices of [] Tacos El Gallo Giro Corp.," "determine[] the rates of pay of employees and dictated other terms of their employment," and "supervis[e] and implement[] . . . the pay policies and practices with respect to the employment and compensation of Plaintiff." *Id.* ¶¶ 16, 21, 23, 26, 33, 36, 48, 52, 54, 57. Guadalupe Tacuepian additionally set Plaintiff's work schedule and "received and monitored Plaintiff's time." *Id.* ¶¶ 31-32.

Accordingly, Plaintiff's allegations are sufficient to establish Victor Tacuepian Damian, Araceli Tacuepian Damian, and Guadalupe Tacuepian as employers under the FLSA for the purposes of his motion. *See Carter*, 735 F.2d at 12.

### 2. Whether Plaintiff Is an Employee under the FLSA

An "employee" is likewise broadly defined in the FLSA as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff alleges he was employed by Defendants and

provided work as "a cook and general labor," while also performing cleaning duties.  *See* Dkt. No. 4 ¶ 2.  As Plaintiff alleges, none of his "work duties required either discretion []or independent judgment."  *Id.* ¶ 68.  Plaintiff's allegations satisfy the definition of employee under the FLSA for the purposes of this motion.  *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372 (CBA) (VMS), 2019 WL 5694104, at *5-*6 (E.D.N.Y. Aug. 16, 2019) (determining that the plaintiff was an "employee" under the FLSA for entry of default judgment because the complaint alleged that he was employed by defendants), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).  Accordingly, Plaintiff is a covered employee under the FLSA.

### 3.    Whether any FLSA Exemption Applies

Even if a plaintiff establishes himself as an employee of a business which meets the criteria for FLSA coverage, he may still be barred from recovery if he falls within one of the FLSA's "litany of exemptions."  *See Fermin*, 93 F. Supp. 3d at 32.  An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010) (citing *Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 56, 61 (D. Conn. 1997)).  How the plaintiff spent his or her time is a factual question, but whether the employee's activities trigger one of the FLSA's exemptions is a legal one.  *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129-30 (2d Cir. 2020).  The burden of invoking these exemptions, however, "rests upon the employer."  *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n.11 (1960)).

Here, because Defendants are in default, they have failed to sufficiently invoke any exemptions.  *See Borja v. MSK Rest. Corp.*, No. 22-CV-6178 (EK) (VMS), 2025 WL 951402, at *12 (E.D.N.Y. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 948122 (E.D.N.Y. Mar. 29, 2025); *Ore v. H & C Cleaning Corp.*, No. 22-CV-20 (AMD) (RER), 2022 WL 19520879,

at *9 (E.D.N.Y. Dec. 14, 2022) ("In defaulting, Defendants have failed to invoke any exemptions.").  "On a motion for a default judgment, therefore, a court may find that litigants are not exempt employees if they 'do not allege any facts that would make them exempt under the FLSA or NYLL.'"  *Borja*, 2025 WL 951402, at *12 (quoting *Cao*, 727 F. Supp. 3d at 275).

Additionally, Plaintiff does not allege facts in the Amended Complaint that infer Plaintiff is exempt under the FLSA or NYLL.  *See* Dkt. No. 4.  Indeed, courts in this Circuit routinely find that restaurant positions similar to Plaintiff's are those that are not exempt under the statutes.  *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 32-33 (finding waiters, kitchen helpers/food preparers, cooks, and dishwashers all non-exempt employment under the FLSA); *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH), 2024 WL 4271234, at *8 (E.D.N.Y. Sept. 19, 2024) (articulating same).

Thus, the undersigned respectfully recommends that Plaintiff be found a non-exempt employee under the FLSA based on Defendants' default.

### C.    Employee Relationship under the NYLL

"To recover under the NYLL, Plaintiff must first 'prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations.'"  *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 368-69 (E.D.N.Y. 2022) (quoting *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015)); *see also* N.Y. Lab. Law § 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2.  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014).  Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors.  *See Mahoney v.*

*Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV) (MMH), 2024 WL 4309775, at *8 (Sept. 26, 2024) ("Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." (citation omitted)), *report and recommendation adopted*, (Text Order dated Jan. 15, 2025).

\*\*\*

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC) (MMH), 2025 WL 832730, at *7 (E.D.N.Y. Mar. 18, 2025), Defendants constitute Plaintiff's employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.    Joint and Several Liability

Plaintiff alleges that all Defendants were Plaintiff's employers throughout his employment, rendering Defendants jointly and severally liable for the claims he brings. *See* Dkt. No. 4 ¶¶ 55, 58; Dkt. No. 22-11 at 2. "As the Court has found that [defendants] were jointly [plaintiff's] employers, each [d]efendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in [plaintiff's] favor." *Fermin*, 93 F. Supp. 3d at 37 (citing cases); *see, e.g.*, *Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469 (PKC) (VMS), 2018 WL 5456654, at *11 (E.D.N.Y. Sept. 8, 2018) ("As the Court has found that [the corporate defendant] and [the individual defendant] were jointly [the] [p]laintiff's employers, each [d]efendant is jointly and

severally liable under the FLSA and the NYLL for any FLSA and NYLL damages award made in [the] [p]laintiff's favor"); *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (finding allegations that an individual defendant "was an owner, partner, or manager," coupled with his default, were sufficient to qualify him as an employer under state and federal law for imposition of joint and several liability); *Shim v. Millennium Grp., LLC*, No. 08-CV-4022 (FB) (VVP), 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010) (finding individual and corporate defendants liable under the FLSA on default judgment based on allegations of actions taken collectively by the defendants); *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (finding a corporate officer, considered an employer under the FLSA, jointly and severally liable along with the corporate defendant).

Accordingly, the undersigned finds that Defendants are jointly and severally liable for Plaintiff's claims.

### E.    Violations of the FLSA and NYLL

#### 1.    Minimum Wage Claims

The FLSA and NYLL each require an employer to pay an employee at least a minimum hourly rate for each hour the employee works. *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 118 (E.D.N.Y. 2023). Plaintiff alleges that Defendants willfully failed to compensate him at the appropriate minimum hourly wage for the hours he worked each week from March 15, 2020, until January 2, 2023, in violation of the FLSA and the NYLL. *See* Dkt. No. 4 ¶¶ 3, 80-86, 91-95.

"A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked." *Brito*, 2022 WL 875099, at *10. "If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he or she worked are accurate." *Tzilin*, 2024 WL 4309775, at *9

(quoting *Zabrodin*, 702 F. Supp. 3d at 119).  In his declaration, Plaintiff alleges that he worked 72 hours per week but was only compensated at a fixed weekly rate of $600.  *See* Dkt No. 22-2 ¶¶ 33-35.

As an initial matter, the Court must determine the applicable minimum wage rates under federal and state law "because Plaintiff is entitled to recover the highest minimum wage rate available at any given period of his employment."  *Bocon*, 2025 WL 832730, at * 8 (first citing 28 U.S.C. § 218(a); and then citing *Brito*, 2022 WL 875099, at *9).  "Under New York, law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment."  *Id.* (first citing N.Y. Lab. Law § 652(1); and then citing N.Y.C.R.R. § 142-2.1(a)).  Under New York law, the appropriate minimum wage rate for large employers, meaning employers of eleven or more employees, was $15.00 on and after December 31, 2018.  N.Y. Lab. Law § 652(1)(a)(i)-(ii).  Plaintiff alleges that "[Defendants'] trucks were typically operated in two-man teams" (Dkt. No. 22-2 ¶ 5) and that "Defendants almost always had between 8-11 trucks out making sales on a daily basis."  Dkt. No. 22-2 ¶ 29.  Defendants thus employed at least eleven employees and were subject to the $15.00 statutory minimum wage required for large employers.  *See* Dkt. No. 22-2 ¶¶ 5, 29.  Because the New York minimum wage rate was higher than the federal minimum wage rate under 29 U.S.C. § 206(a)(1) ($7.25 per hour on and after July 24, 2009), Plaintiff is entitled to compensation using the local minimum wage rate of $15.00 per hour.

To determine whether Plaintiff was paid the applicable minimum wage, the Court must first determine Plaintiff's regular hourly wage rate.  *See Chen*, 2023 WL 2583856, at *11; *Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246 (RJD) (RER), 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May

28, 2019).  Plaintiff alleges that he was employed by Defendants from March 15, 2020 until January 2, 2023.  Dkt. No. 22-8.  Plaintiff further alleges that Defendants paid him a fixed weekly rate of $600.00.  Dkt. No. 4 ¶ 71.  Nothing in Plaintiff's allegations suggests that he did not receive his weekly payments, albeit in cash.  *Id.* ¶¶ 71-72.

As Plaintiff was compensated on a weekly basis, his regular hourly rate is calculated by "dividing the employee's weekly earnings by the lesser of forty hours or the hours actually worked."  *Escobar v. Mahopac Food Corp.*, No. 19-CV-00510 (FB) (JRC), 2025 WL 934906, at *9 (E.D.N.Y. Mar. 5, 2025) (citing N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5), *report and recommendation adopted*, 2025 WL 931283 (Mar. 27, 2025); *see also Zaldivar v. JANL, Inc.*, No. 23-CV-1434 (NCM) (LGD), 2025 WL 2413850, at *10 (E.D.N.Y. Aug. 20, 2025) ("Because Plaintiff worked sixty-eight hours per week, his regularly hourly rate is calculated by dividing his weekly rate by forty hours.").

Calculating Plaintiff's regular rate based on a 40-hour work week, Plaintiff's regular rate of pay from March 15, 2020, until January 2, 2023, was $15.00 per hour ($600/40 hours).  *See* Dkt. Nos. 22-8, 22-14 at 9.  Given that Plaintiff's regular rate of pay was equal to the applicable minimum wage through the duration of his employment with Defendants, and because Plaintiff's allegations do not suggest that Defendants failed to compensate him with his minimum wages, Plaintiff was properly paid the New York minimum wage for the 145 weeks he was employed by Defendants, in accordance with N.Y. Lab. Law § 652(1).  Accordingly, the undersigned respectfully recommends denying Plaintiff's claim for unpaid minimum wages.  *See Escobar*, 2025 WL 934906, at *9 (denying the plaintiff's unpaid minimum wages claim because the plaintiff's calculated regular hourly rate, based on a fixed weekly rate, was greater than the applicable minimum wage); *see also Bocon*, 2025 WL 832730, at *9 (finding liability for unpaid

34

minimum wages because (1) the plaintiff alleged that although the defendants issued plaintiff a check, that check bounced for insufficient funds, and thus plaintiff did not receive their minimum wages; and (2) the plaintiff's calculated regular hourly rate was $0 per hour for most months); *Sanchez v. Structure Corp.*, No. 19-CV-04524 (KAM) (PK), 2023 WL 2815717, at *8 (E.D.N.Y. Feb. 24, 2023) (finding liability for unpaid minimum wages because Plaintiff was paid $0 per hour), *report and recommendation adopted as modified sub nom.. Sanchez v. Trescly*, 2023 WL 2473070 (E.D.N.Y. Mar. 13, 2023).

Plaintiff asserts that he has a valid minimum wage claim under the "Divided by Hours Worked" method. Dkt. No. 24 at 1. His proposed method functions by dividing his fixed weekly salary ($600) by the total number of hours worked (72), resulting in a regular rate of $8.33 per hour and thus able to recoup on his claim. Dkt. No. 24 at 1. This argument is unavailing because, as previously discussed, the proper method for determining a plaintiff's regular hourly rate is to divide the weekly salary "by the *lesser* of either 40 hours or the total hours worked." *Shanfa Li v. Chinatown Take-Out Inc.*, 812 F. App'x 49, 52 (2d Cir. 2020) (quoting N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5) (emphasis added).[5]

Accordingly, the undersigned respectfully recommends that Plaintiff's unpaid minimum wage claims be denied.

### 2. Overtime Wage Claims

Plaintiff seeks reimbursement for the overtime wages that he should have received pursuant to the FLSA and NYLL. *See* Dkt. No. 4 ¶¶ 87-90, 96-99. The FLSA requires that "'for a

---

[5] The undersigned further notes that Plaintiff does not point to case law to support his argument in his supplemental briefing but rather cites to the relevant portion of N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5, quoted above, in his memorandum of law in support of his motion. Dkt. No. 22-14 at 13; *see generally* N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5. In light of Plaintiff's allegation that he worked 72 hours per week, the proper calculation uses a 40-hour workweek, and therefore Plaintiff was paid the state minimum wage of $15 per hour.

workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she or] he is employed.'"  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)).  The NYLL includes the same requirement, providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for "working time over 40 hours" during "each workweek."  12 N.Y.C.R.R. § 142-2.2.

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *see also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that the plaintiff worked over 40 hours per week for a specific time period sufficient to establish an overtime claim).

Here, Plaintiff sufficiently alleges that Defendants failed to pay him the requisite overtime pay.  As noted above, Plaintiff alleges that from March 2020 through January 2, 2023, he "typically worked six (6) days per week from 7:00 P.M. until 7:00 A.M.," which totaled "approximately 72 hours per week."  Dkt. No. 22-2 ¶ 34  During this time, Plaintiff claims that Defendants paid him a fixed "weekly salary of $600.00" without consideration of the overtime premium for hours worked over 40 per week.  *Id.* ¶ 35.

Although Plaintiff agreed to this fixed weekly rate for workweeks exceeding 40 hours (*id.* ¶¶ 33-34), there is no indication that his weekly salary already encompassed the mandatory

premium for overtime hours.  *See Giles v. City of New York*, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999) ("The fact that an employee regularly works 60 or more hours does not, without more, indicate that the employee's weekly salary was intended to include the FLSA overtime premium for all hours in excess of 40." (citing *Adams v. Dep't of Juvenile Justice,* 143 F.3d 61, 67 (2d Cir. 1998))).  Rather, "[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting *Jiao v. Shi Ya Chen,* No. 03-CV-165 (DF), 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007)). Having defaulted, Defendants have failed to rebut the presumption that Plaintiff's fixed weekly salary was not mutually agreed to include overtime pay and instead accounted only for the first 40 hours worked per week.

Plaintiff's allegations are therefore sufficient to establish Defendants' liability for failure to pay overtime under both the FLSA and the NYLL.  *See Martinez v. Golden Flow Dairy Farms Inc.*, No. 21-CV-2421 (ENV) (MMH), 2024 WL 1242639, at *6 (E.D.N.Y. Mar. 22, 2024) (finding that the plaintiff sufficiently alleged an overtime pay based on allegations that the defendant had a policy and practice of failing to compensate for all hours worked in excess of forty hours per week at the proper overtime rate); *Newman v. West Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (finding that the plaintiff's sworn statement estimating his schedule and pay established he worked over 40 hours a week without time-and-a-half compensation and subjected the defendants to liability on default).

Accordingly, the undersigned respectfully recommends that Defendants be found liable for failing to pay Plaintiff's overtime wages under both the FLSA and the NYLL.

### 3.    Spread of Hours Claim

Plaintiff seeks reimbursement for the additional hours worked pursuant to the NYLL's spread of hours requirement.  Under the NYLL, an employee is entitled to recover an additional hour of pay at the minimum wage for each day worked in excess of ten hours.  12 N.Y.C.R.R. § 142-2.4; *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353 (DG) (RER), 2023 WL 7000934, at *5 (E.D.N.Y. Aug. 29, 2023), *report and recommendation adopted*, (Text Order dated Oct. 17, 2023). Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty."  12 N.Y.C.R.R. § 146-1.6; *Baltierra v. Advantage Pest Control Co.*, No. 14-CV-5917 (AJP), 2015 WL 5474093, at *6 (S.D.N.Y. Sept. 18, 2015); *Esquivel*, 2023 WL 6338666, at *9 ("The 'spread of hours' is the length of time between the beginning and end of an employee's workday, and includes working time plus time off for meals plus intervals off duty.").

Typically, only employees who make minimum wage or less are eligible for spread of hours pay.  *See Fermin*, 93 F. Supp. 3d at 45-46 ("A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage."); *Pinovi v. FDD Enters., Inc.*, No. 13-CV-2800 (GBD) (KNF), 2015 WL 4126872, at *5 (S.D.N.Y. July 8, 2015 ("[R]ecent case law has been nearly unanimous that the spread-of-hours requirement extend only to workers paid at the minimum wage level.").  The New York State Department of Labor has explained "[i]t is important to note that the 'spread -of-hours regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours at the minimum wage plus one additional hour at the

minimum wage." *Singh v. Patel*, No. 12-CV-3204 (SJF) (ETB), 2013 WL 2190153, at *2 (E.D.N.Y. May 16, 2013) (internal citation omitted); *Leon v. Chen*, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *7 (E.D.N.Y. Mar. 29, 2017) ("Courts, however, have given deference to the New York State Department of Labor's interpretation that spread-of-hours does not apply to an employee whose workday is in excess of ten hours if his or her total daily compensation exceeds the New York State Minimum wage multiplied by the number of hours he or she worked plus one additional hour at the minimum wage.").

Here, Plaintiff has established that Defendants failed to pay him the requisite spread of hours pay. Plaintiff states he regularly "typically worked six days per week from 7:00 p.m. until 7:00 a.m." Dkt. No. 22-2 ¶ 34; Dkt. No. 4 ¶¶ 59-60. Plaintiff received a fixed weekly rate of $600, which did not include spread of hours pay for his shifts longer than ten hours per day, despite regularly working 12-hour days. Dkt. No. 22-2 ¶¶ 33-39. Further, Plaintiff was also not paid more than the New York minimum wage, as discussed above. *See Martinez*, 2024 WL 1242639, at *6 (finding liability for spread of hours pay because, based on the plaintiff's weekly rate of $480, the plaintiff "did not earn more than the minimum wage"). Because Plaintiff was paid minimum wage and did not receive the statutorily required spread of hours pay, Plaintiff has alleged sufficient facts to establish Defendants' liability under the NYLL.

Accordingly, the undersigned respectfully recommends that Defendants be found liable for spread of hours pay under the NYLL.

### 4.    Wage Statement and Wage Notice Violations

"Pursuant to the New York Wage Theft Protection Act ('WTPA'), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, 'the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or

other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;' 'the regular pay day designated by the employer;' and the employer's address and telephone number." *Tzilin*, 2024 WL 4309775, at *10 (quoting N.Y. Lab. Law § 195(1)(a)). "The WTPA also requires employers to provide employees with a statement with every payment of wages, listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked." *Id.* (quoting N.Y. Lab. Law § 195(3)).

As discussed above in Section III.A, the undersigned respectfully recommends that Plaintiffs' claims for violations of the NYLL's wage notice and wage statement provisions against Defendants be dismissed for lack of standing.

## VI.    **Damages**

As Plaintiff has proven Defendants' liability for his claims under the FLSA and the NYLL from March 2020 through January 2, 2023, the Court next evaluates damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, [t]he [C]ourt must be satisfied that [the] [p]laintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (quotations and citation omitted). "That being said, because under FLSA the burden is on an employer properly to record hours, a plaintiff need not compute FLSA damages with precision." *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quotations and citation omitted), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

As described below, Plaintiff seeks damages for unpaid overtime wages and unpaid minimum wages under the FLSA and NYLL, statutory damages for wage statement and wage notice violations under the NYLL,[6] including applicable liquidated damages, interest, attorneys' fees, and costs.  Dkt. No. 4 ¶ 4.  Since the undersigned has respectfully recommended denying Plaintiff's claim for unpaid minimum wages, the Court will only discuss unpaid overtime compensation.

### A.    Unpaid Overtime Compensation Under the FLSA and NYLL

Plaintiff seeks to recover $104,400.00 in unpaid overtime wages for his entire period of employment between March 15, 2020, and January 2, 2023, under both the FLSA and NYLL.  *See* Dkt. No. 4 ¶¶ 3-4, 80-99; Dkt. No. 22-8 (containing calculation of Plaintiff's dates of employment); Dkt. No. 22-14 at 16.  "The plaintiff may not recover double damages for the same injury under both the FLSA and NYLL, though the plaintiff is entitled to relief under whichever statute provides the greater measure of damages." *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675 (KAM) (TAM), 2024 WL 3344001, at *10 (E.D.N.Y. July 9, 2024); *see also Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM) (RER), 2022 WL 4646866, at *6 (E.D.N.Y. Aug. 29, 2022) ("Plaintiffs have established Defendants' liability under both the FLSA and the NYLL, but plaintiffs are not entitled to recover twice for the same injury . . . [W]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which

---

[6]  Because Plaintiff lacks standing to pursue claims for arising under Sections 195(1) and § 195(3) of the NYLL, Plaintiff is not entitled to statutory damages for these claims.  *See Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2022 WL 18999832, at *5 (E.D.N.Y. Dec. 13, 2022) (finding that plaintiff "failed to establish standing for the wage notice and statements claims and thus is not entitled to statutory damages"), *report and recommendation adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023), *aff'd*, 113 F.4th 300 (2d Cir. 2024).  The undersigned will therefore not address those claims for damages.

provides the greatest amount of damages." (internal quotations and citations omitted)), *report and recommendation adopted*, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).

Here, and as discussed above, the NYLL has a longer statute of limitations and provides for the greatest recovery of damages, given its higher rate of minimum wage and actionability for spread of hours claims.[7]  The undersigned thus calculates Plaintiff's minimum wage, overtime, and spread of hours damages according to the NYLL.  *See Zaldivar*, 2025 WL 2413850, at *11 ("Here, because the NYLL overtime provisions cover the same period as and extend further than the applicable FLSA limitations period, and because the recoverable overtime premium is the same under both statutes, the Court calculates Plaintiff's overtime damages solely under the NYLL"); *Diaz*, 2022 WL 4646866, at *6 (calculating damages under the NYLL because it provided for the greatest recovery).

Under the NYLL, the amount of unpaid overtime wages is calculated by subtracting the amount Plaintiff was actually paid from the amount that he should have been paid under the FLSA and NYLL.  *See, e.g.*, *Cooper*, 2024 WL 3344001, at *10-*11 (performing a similar overtime damage calculation); *Zaldivar*, 2025 WL 2413850, at *11-*12 (same).  To calculate the damages owed to Plaintiff under the NYLL, the Court must first determine Plaintiff's minimum wage for his regular, full-time work hours (40 hours per week) by multiplying the greater of Plaintiff's regular rate of pay or the applicable lawful minimum wage under the NYLL during the period of employment—$15.00 per hour—by 40.  *Cooper*, 2024 WL 3344001, at *10; N.Y. Lab. Law § 652(1)(a)(i)-(ii).  Plaintiff alleges that his period of employment with Defendants lasted "from March 2020 until January 2, 2023."  Dkt. No. 4 ¶ 7.  Plaintiff fails to offer a more precise start date

---

[7] Under 28 U.S.C. § 206(a), at all times relevant to the case, Plaintiff would be entitled to a minimum wage of $7.25.  Under the NYLL, at all times relevant to the case, Plaintiff was entitled to a minimum wage of $15.00.

in his pleadings or affidavit.  *See id.*, Dkt. No. 22-2. His calculation of damages, however, seeks recovery for an employment period of March 15, 2020, to January 2, 2023.  *See* Dkt. No. 22-8. Accepting Plaintiff's inference as reasonable, March 15, 2020, and January 2, 2023, will be considered the start and end dates, respectively, for Plaintiff's employment.[8]

Plaintiff further alleges he typically worked from 7:00 PM to 7:00 AM, six days a week. *See* Dkt. No. 22-2 ¶¶ 33-35.  Plaintiff thus worked a total of approximately 72 hours per week for which he was compensated through a $600 weekly payment.  *Id.*  "The FLSA and the NYLL's implementing regulations require an employer to pay an employee an overtime premium of one and one-half times the employee's regular rate for each hour the employee works above forty in a workweek."  *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2; *see also Zaldivar*, 2025 WL 2413850, at *9.  Thus, to calculate Plaintiff's overtime compensation, the number of hours Plaintiff worked in excess of forty (40) per week is multiplied by 150 percent of the higher of the regular rate of pay, or the applicable minimum wage.  *Guthrie*, 2022 WL 18999832, at *6.  The resulting number constitutes the amount of overtime compensation owed to Plaintiff on a weekly basis.  *Id.*

The undersigned has reviewed Plaintiff's overtime damages calculation (*see* Dkt. No. 22-8) and finds Plaintiff's calculation inconsistent with that under the NYLL.  Here, Plaintiff did not account for $600 fixed weekly pay in his damages calculation, so the amount Plaintiff is owed must be calculated using Plaintiff's overtime premium.  *See* Dkt Nos. 22-8, 22-14 at 8-10.  Indeed, Plaintiff is entitled to the difference between his regular rate of pay ($15.00 per hour) and what he was owed for overtime compensation ($22.50 per hour, or 1.5 times his hourly rate).  *See Martinez*, 2024 WL 1242639, at *9 ("Because Plaintiff has already been paid a weekly amount for these [overtime] hours, the overtime wage deficiency is calculated by multiplying the difference between

---

[8] Although the statute of limitations bars recovery under the FLSA for his time worked prior to November 2, 2020, the entire period of Plaintiff's employment is recoverable under the NYLL, as discussed above.

the paid rate and the overtime wage rate . . . by the total number of overtime hours worked."
(quoting *Sanchez*, 643 F. Supp. 3d at 377) (alteration in original)).

Plaintiff's overtime damages can therefore be calculated by multiplying the overtime
premium ($7.50) by the number of hours worked in excess of forty each week (32, as he alleges
working a total of 72 hours per week) and by the number of complete weeks at issue (145[9]). Based
on this calculation, the Court concludes that Plaintiff is owed $34,800.00 for the period of March
15, 2020, through January 2, 2023.

The undersigned's calculations for unpaid overtime wages for Plaintiff are as follows:

| Pay Period | Actual Regular Hourly Rate | OT Rate (Reg. Hourly Rate x 1.5) | OT Premium (OT Rate – Regular Hourly Rate) | OT Hours Per Week | Weeks Worked | Total Unpaid Overtime[10] |
|---|---|---|---|---|---|---|
| 03/15/2020– 01/02/2023 | $15.00 | $22.50 | $7.50 | 32 | 145 | $34,800.00 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded
$34,800.00 in unpaid overtime wages under the NYLL.

### B.    Spread of Hours Pay Under the NYLL

Plaintiff seeks $12,558.00 in unpaid spread of hours compensation.[11] Dkt. Nos. 22-8, 22-
14 at 16.  As explained above, Plaintiff was entitled to payment at the minimum wage rate for days

---

[9]  Plaintiff's damages calculation shows that during his final days of employment, ranging from December
31, 2022 through January 2, 2023, Plaintiff did not accrue overtime pay.  *See* Dkt. No. 22-8.

[10]  $7.50 [overtime premium] x 32 [hours over 40 per week] x 145 [complete weeks] = $34,800.00.

[11]  Plaintiff's damages calculation shows $12,558.00 in unpaid spread of hours pay (*see* Dkt. No. 22-8),
while Plaintiff's memorandum of law requests $24,012.00 in unpaid spread of hours pay.  Dkt. No. 22-14
at 16.  The Court will consider Plaintiff's request for $12,558.00.

in which he worked a spread of more than ten hours. *See Diaz*, 2022 WL 4646866, at \*10; *Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at \*7 (S.D.N.Y. Aug. 2, 2012).

As stated above in Section V.E, the Court will consider Plaintiff's recollection of his hours in determining his damages for unpaid wages, as Defendants "deliberately avoided tracking his hours and pay in order to thwart his ability to vindicate his rights under the labor law," and as such, more precise records might not even exist. Dkt No. 4 ¶ 72. Plaintiff alleges that he regularly worked approximately 12 hours a day for six days per week for 145 weeks of employment for Defendants.[12] Dkt. No. 22-2 ¶ 34; Dkt. No. 22-14 at 16; Dkt. No. 22-8.

"Spread-of-hours pay is calculated by multiplying the legal minimum wage rate by the number of days that Plaintiff worked in excess of 10 hours per day in each period, and is added to the amount of wages Plaintiff should have been paid." *Cooper*, 2024 WL 3344001, at \*10. Multiplying the legal minimum wage rate ($15.00) by the number of days that Plaintiff worked per week in excess of 10 hours per day (870), the undersigned concludes that Plaintiff is owed $13,050.00 in spread of hours pay for the period of March 15, 2020, through January 2, 2023.

The undersigned's calculations for damages for violations of NYLL spread of hours provisions, therefore, is as follows:

---

[12] Plaintiff initially represented that he worked six or seven days per week (Dkt. No. 4 ¶ 70), but later clarified that he worked approximately 12 hours a day for six days in his declaration. Dkt. No. 22-2 ¶ 34. The undersigned thus considers Plaintiff's contention that he is entitled to spread of hours pay encompassing six days per week.

| Pay Period | Actual Regular Hourly Rate | Days Worked Per Week over 10 Hours | Weeks Worked | Total Unpaid Spread of Hours Pay[13] |
|---|---|---|---|---|
| 03/15/2020–01/02/2023 | $15.00 | 6 | 145 | $13,050.00 |

Accordingly, by adding the total amount that Plaintiff is owed for unpaid overtime wages ($34,800.00) and unpaid spread of hours pay ($13,050.00), the Court concludes that Plaintiff is owed a total of $47,850.00 in compensatory damages.

### C.    Liquidated Damages Under the FLSA and NYLL

Plaintiff seeks $116,958 in liquidated damages. Dkt. No. 22-8. Both the FLSA and NYLL generally provide for liquidated damages unless the defendant establishes a good faith basis to have believed its actions were lawful. *See* 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1). Because "there are no meaningful differences" between the liquidated damages provisions of the FLSA and NYLL, the Second Circuit has prohibited a plaintiff from recovering duplicative liquidated damages (*i.e.*, liquidated under *both* the FLSA and NYLL) for the same course of conduct. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."); *see Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) ("In light of the principle that the law providing the greatest recovery will govern, [a p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." (quotations and citation omitted)).

Here, Plaintiff's recovery for liquidated damages is the same under both the FLSA and the NYLL. Moreover, in light of Defendants' default, Defendants have failed to make a showing of

---

[13] $15.00 [minimum wage rate] x 6 [days per week that Plaintiff worked more than 10 hours] x 145 [complete weeks] = $13,050.00.

good faith. *See Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963 (WFK), 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22, 2019) ("As a result of defendants' default in this action, the record is devoid of evidence of their good faith or reasonable belief."), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019); *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *10 (E.D.N.Y. Mar. 12, 2014) ("Obviously, as a result of [the] defendants' default in this action, the record is devoid of evidence of [the] defendants' good faith or reasonable belief. Therefore, the Court recommends that liquidated damages be awarded under the FLSA."); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 91 (E.D.N.Y. 2012) ("Where, as here, a defendant employer has defaulted, the court plainly cannot find that it has made the showing of good faith necessary to defeat an award of liquidated damages."). Plaintiff is therefore entitled to 100 percent of his overtime pay and unpaid wages recovery as liquidated damages.

Thus, as Plaintiff's total eligible compensatory damages are $47,850.00 ($34,800.00 in unpaid overtime and minimum wage damages plus $13,050.00 in unpaid spread of hours damages), the undersigned respectfully recommends that Plaintiff recover "an additional equal amount as liquidated damages" in the amount of $47,850.00. *See Rodriguez,* 784 F. Supp. 2d at 125.

### D.    Statutory Damages

Plaintiff seeks statutory damages under NYLL's WTPA in light of Defendants' willful violations of the wage notice and wage statement provisions. *See* Dkt. No. 4. ¶¶ 100-105. "Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum amount of $5,000." *Flores v. Andy Constr. NY Inc.*, No. 22-CV-06486 (OEM) (JMW), 2024 WL 2940191,

at *17 (E.D.N.Y. Apr. 14, 2024) (citation omitted).  "Similarly, violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum amount of $5,000."  *Id.* (cleaned up).

As noted above, the undersigned respectfully recommends that Plaintiff's wage notice and wage statement claims be dismissed due to Plaintiff's lack of standing.  Therefore, the undersigned declines to consider an award of statutory damages.

### E.    Pre-Judgment Interest

Although the Amended Complaint contains a demand for pre-judgment interest (Dkt. No. 4 ¶¶ 4; *id.* at 14), Plaintiff's motion does not seek such relief.  *See* Dkt. No. 22; Dkt. No. 22-14 (seeking only post-judgment interest in the proposed judgment); *id.* at 8 (excluding pre-judgment interest from the calculated damages award despite Plaintiff's damages calculation including a calculation for potential pre-judgment interest).

Because Plaintiff does not advance an argument in support of his request for pre-judgment interest, the undersigned recommends a finding that Plaintiff has abandoned this claim.  *See Zepeda v. Halftime Bar & Grill Corp.*, No. 22-CV-2355 (JMA) (SIL), 2023 WL 266504, at *2 (E.D.N.Y. Jan. 18, 2023) ("The [c]ourt does not award [the p]laintiff prejudgment interest because, while she requested prejudgment interest in the operative [c]omplaint, she appears to have abandoned that request in the instant default judgment motion."); *BASF Corp. v. Prime Auto Collision Inc.*, No. 20-CV-4797 (NGG) (RLM), 2022 WL 704127, at *8 (E.D.N.Y. Mar. 9, 2022) ("Although the [c]omplaint requests pre-judgment interest, . . . [the] plaintiff's motion for default judgment fails to request pre-judgment interest, . . . and its [p]roposed [j]udgment reflects an amount that does not include any pre-judgment interest . . . .  The [c]ourt therefore recommends that no pre-judgment interest be awarded to [the] plaintiff."); *Arch Specialty Ins. Co. v. Canbert Inc.*, No. 19-CV-5920 (EK) (PK), 2021 WL 1200329, at *3 n.3 (E.D.N.Y. Mar. 9, 2021)

(recommending that claim asserted in complaint but "not discussed in the [m]otion" for default judgment be deemed abandoned), *report and recommendation adopted*, 2021 WL 1193004 (E.D.N.Y. Mar. 30, 2021); *Vicedomini v. A.A. Luxury Limo Inc.*, No. 18-CV-7467 (LDH) (RLM), 2019 WL 12338298, at *9 (E.D.N.Y. Dec. 6, 2019) (recommending that the district judge not award prejudgment interest, attorneys' fees, or costs, because requests for such relief in the complaint were not renewed in plaintiff's motion for default judgment), *report and recommendation adopted*, 2020 WL 9814086 (E.D.N.Y. Mar. 13, 2020); *Maldonado v. Landzign Corp.*, No. 15-CV-3054 (DRH) (GRB), 2016 WL 4186815, at *4 n.3 (E.D.N.Y. July 14, 2016) (request for pre-judgment interest "deemed abandoned" where made in the complaint but not in papers supporting motion for default), *report and recommendation adopted*, 2016 WL 4186982 (E.D.N.Y. Aug. 8, 2016); *Bd. of Trs. of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare Fund v. Harbor Island Contracting, Inc.*, No. 13-CV-6075 (MKB), 2015 WL 1245963, at *2, n.1 (E.D.N.Y. Mar. 16, 2015) ("The [t]rustees do not pursue this relief in their motion for default judgment, and thus the [c]ourt deems this request abandoned.").

Accordingly, the undersigned respectfully recommends that Plaintiff's request for pre-judgment interest be deemed abandoned.

### F.    Post-Judgment Interest

Plaintiff further seeks post-judgment interest. Dkt. No. 4 ¶¶ 4; *id.* at 14; Dkt. No. 22-11 at 2. As such, and under 28 U.S.C. § 1961(a), Plaintiff is entitled to post-judgment interest as of right. *Zaldivar*, 2025 WL 2413850, at *13 (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case); *see also Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011) ("The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money

damages are recovered." (citing 28 U.S.C. § 1961(a))), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011).

Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." *Cabrera*, 412 F. Supp. 3d at 186 (quoting 28 U.S.C. § 1961(a)).

Therefore, the undersigned respectfully recommends that Plaintiff be awarded post-judgment interest; to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See Fermin*, 93 F. Supp. 3d at 52.

### G.    Attorneys' Fees and Costs

#### 1.    Fees

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorneys' fees and costs in wage-and-hour actions." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020); *see* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180 (AMD) (PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

#### i.    Reasonable Hourly Rate

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Hennessy v. 194 Bedford Ave Rest. Corp.*, No. 21-CV-5434 (FB) (RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022) (internal citations and quotation marks omitted), *report and recommendation adopted*, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (cleaned up). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours. *Id.* "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Here, Plaintiff seeks an award of $2,100.00 in attorneys' fees. *See* Dkt. No. 22-14 at 8, 17. In support of his request for attorneys' fees, Plaintiff provided the Court with the mandatory documentation required in the Second Circuit. *See* Dkt. No. 22-10; *see also N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48, 1153 (2d Cir. 1983) (establishing a requirement for clear, contemporaneous documentation to support a request for attorneys' fees, which must include the attorney's name, "the date, the hours expended, and the nature of the work done").

Turning first to the reasonable hourly rate, the undersigned examines the qualifications of counsel seeking the fee award. Colin Mulholland, counsel for Plaintiff, seeks an award of

attorneys' fees in the amount of $2,100.00 for 5.6 hours of work performed in this matter at a rate of $375.00 per hour. *See* Dkt. No. 22-10 at 1. "Courts in the Eastern District of New York have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (citing cases), *report and recommendation adopted*, 2020 WL 5259056 (Sept. 3, 2020). Higher rates are approved where the party applying for fees supports the hourly rate with evidence such as counsel's extensive expertise, experience before the federal bar, and specialization required to litigate the matter. *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-CV-2073 (FB) (RML), 2023 WL 1072952, at *4 (E.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023).

Mr. Mulholland is a solo practitioner who specializes in FLSA and employment claims in New York. *See* Dkt. No. 22-14 at 17. He was admitted to practice in 2013, and his entire career has been spent litigating FLSA and employment claims. *See id.* Based on the rates generally charged for this type of work in FLSA and NYLL defaults, the undersigned finds that Mr. Mulholland's hourly rate of $375.00 is reasonable. Additionally, other courts in this District have found Mr. Mulholland's rate to be reasonable in similar cases involving FLSA and NYLL default judgments. *See, e.g.*, *Bocon*, 2025 WL 832730, at *15 (finding Mr. Mulholland's requested hourly rate of $375 reasonable based on his experience "litigat[ing] dozens of FLSA claims and employment claims throughout his career"); *Jurado v. Bisbas Gourmet Deli Inc.*, No. 23-CV 5175 (BMC), 2024 WL 694100, at *2 (E.D.N.Y. Feb. 20, 2024) (finding Mr. Mulholland's requested hourly rate of $375 reasonable "given the substantial experience of [Mr. Mulholland] in wage litigation and the high quality of the work in this case"); *Cisneros v. Zoe Constr. Corp.*, No. 21-

CV-6579 (DG) (CLP), 2023 WL 5978702, at *13 (E.D.N.Y. Aug. 10, 2023) ("Based on the Court's knowledge of rates generally charged for this type of work in connection with an FLSA default, Court finds that the rate of $375 per hour for a sole practitioner of Mr. Mulholland's experience is within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District."), *report and recommendation adopted*, (Text Order dated Mar. 31, 2025); *Cruz v. O & M Pizza Corp.*, No. 20-CV-5057 (AMD) (CLP), 2022 WL 3448661, at *12 (E.D.N.Y. July 22, 2022) (finding Mr. Mulholland's requested hourly rate of $375 reasonable given that "Mr. Mulholland's experience is within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District"), *report and recommendation adopted*, 2022 WL 3446332 (E.D.N.Y. Aug. 17, 2022).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded an hourly rate of $375.00 for work performed by Mr. Mulholland.

### ii.    Reasonable Hours Expended

Turning next to the reasonableness of the hours expended in litigating this action, the total number of hours billed in this matter was 5.6 hours.  Dkt. No. 22-10 at 1.  Courts in this District have deemed fees reasonable where the attorneys billed a far greater number of hours in FLSA and NYLL default judgment cases. *See, e.g.*, *Leon v. Chen*, 2017 WL 1184149, at *10 (finding that 13.51 hours was reasonable in default judgment motion brought under the FLSA and NYLL); *Zhang v. Red Mountain Noodle House, Inc.*, No. 15-CV-628 (SJ) (RER), 2016 WL 4124304, at *7 (E.D.N.Y. July 4, 2016) (approving total of 22.1 hours in default judgment FLSA case), *report and recommendation adopted*, 2016 WL 4099090 (Aug. 2, 2016).  In *Jurado*, Mr. Mulholland performed 8 hours of work litigating an FLSA default that involved far less motion practice than the instant case, and his efforts were described as "efficient."  2024 WL 694100, at *2.

Accordingly, the undersigned finds that 5.6 hours spent by counsel here is reasonable, given the procedural posture of the case.

Based on the hourly rates set forth above and the hours billed on this matter, the undersigned respectfully recommends that Plaintiff be awarded $2,100.00 in attorneys' fees.

### 2.    Costs

When a party is awarded attorneys' fees, it is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorney and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quotations omitted). To recover these costs, the plaintiff is required to "submit adequate documentary evidence in support." *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015). Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photcopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Gab Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987)).

Here, Plaintiff requests an award of $732.00 in costs ($402.00 for the filing fee, $330.00 for serving Defendants with the summons and complaint). Dkt. No. 22-10 at 1. In support of the request, Plaintiff includes an invoice from the process server that substantiates his requested award. Dkt. No. 22-10 at 2. Moreover, "[f]iling fees are recoverable without supporting documentation if verified by the docket." *US All. Fed. Credit Union v. M/V Kamara Fam.*, 691 F. Supp. 3d 646, 665 (E.D.N.Y. 2023) (collecting cases). The docket reflects that Plaintiff paid the $402.00 filing fee. *See* Dkt. No. 1.

Accordingly, the undersigned recommends that Plaintiff be awarded $732.00 in costs.

## VII.    <u>Conclusion</u>

For the reasons set forth above, the undersigned respectfully recommends that Plaintiff's motion be granted in part and denied in part, and that judgment be entered against Defendants, jointly and severally, in the amount of $47,850.00, comprising $34,800.00 in unpaid overtime wage damages; $13,050.00 in unpaid spread of hours damages; $47,850.00 in liquidated damages; and $2,832.00 in attorneys' fees and costs; plus post-judgment interest.    Additionally, the undersigned respectfully recommends that Plaintiff's fifth and sixth causes of action be dismissed without prejudice.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants and to file proof of service on ECF by October 6, 2025. Copies shall be served at the following addresses:

Tacos El Gallo Giro Corp.
Attn: Victor Tacuepian Damian, Araceli Tacuepian Damian, Guadalupe Tacuepian
3554 95th St, Apt 3C
Jackson Heights, NY 11372

Tacos El Gallo Giro Corp.
Attn: Victor Tacuepian Damian, Araceli Tacuepian Damian, Guadalupe Tacuepian
86-22 Whitney Ave, Fl 2
Elmhurst, NY 11373

Tacos El Gallo Giro Corp.
Attn: Victor Tacuepian Damian, Araceli Tacuepian Damian, Guadalupe Tacuepian
6403 Roosevelt Ave
Woodside, NY 11377

Victor Tacuepian Damian
3554 95th St, Apt 3C
Jackson Heights, NY 11372

Araceli Tacuepian Damian
3554 95th St, Apt 3C
Jackson Heights, NY 11372

Guadalupe Tacuepian
3554 95th St, Apt 3C
Jackson Heights, NY 11372

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Morrison. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party waives appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue."); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618, at *1 (2d Cir. Nov. 15, 2023) (holding "the record is clear" that failure to object to an R&R forfeits claims on appeal); *see generally Thomas v. Arn*, 474 U.S. 140 (1985) (ruling that this practice is Constitutionally valid).

Dated:      Brooklyn, New York           **SO ORDERED.**
              October 6, 2025

                                            */s/ Joseph A. Marutollo*
                                         JOSEPH A. MARUTOLLO
                                         United States Magistrate Judge